IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| PAUL S.[1],<br>    Plaintiff, | Case No. 2:22-cv-4090<br>Morrison, J.<br>Litkovitz, M.J. |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>    Defendant. | **REPORT AND<br>RECOMMENDATION** |

Plaintiff Paul S. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 10) and the Commissioner's response in opposition (Doc. 11).

**I. Procedural Background**

Plaintiff filed his application for benefits on December 29, 2016, alleging disability due to a stage two brain tumor, joint pain and aches, unstable memory, constant itching, temperature fluctuations, and the inability to stand and sit for too long. (Tr. 240). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Heidi Southern. Plaintiff, and a vocational expert (VE), appeared and testified at the ALJ hearing on November 20, 2019. (Tr. 40-65). On December 16, 2019, the ALJ issued an unfavorable decision. (Tr. 16-39). Plaintiff appealed the decision of the Commissioner to this Court. Following judicial remand (Tr. 560-87), a telephone hearing was held on June 30, 2022, with ALJ Matthew Winfrey. (Tr. 533-59).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

Plaintiff and a VE appeared and testified at the second hearing. (*Id.*). On August 30, 2022, ALJ Winfrey issued a decision denying plaintiff's application. (Tr. 508-32). Plaintiff did not request review by the Appeals Council opting to directly file suit with this Court.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since December 29, 2016, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: grade II astrocytoma of the brain; seizure disorder; chronic tension-type headache; obesity; major vascular neurocognitive disorder with behavioral disturbance; post-traumatic stress disorder ("PTSD"); and cannabis use disorder (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, [the ALJ] finds that the [plaintiff] has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 416.967(b) except occasionally climb ramps and stairs; no climbing ladders, ropes, or scaffolds; occasionally stoop, kneel, crouch, crawl; no balancing as defined by the Selected Characteristics of Occupations ("SCO"); no exposure to workplace hazards such as unprotected heights or dangerous, unprotected moving mechanical parts; no occupational driving; individual is limited to performing simple, routine, repetitive tasks, but not at a production rate pace, such as one has with assembly line work; can tolerate occasional interactions with supervisors, coworkers, and the public and interactions would be superficial meaning interactions would be limited to the straightforward exchange of information without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision; can tolerate occasional changes in duties and the work setting; and would be off task 5 percent of the time during the workday due to various symptoms.

5. The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).[2]

6. The [plaintiff] was born [in] . . . 1979 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The [plaintiff] has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).[3]

10. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since December 29, 2016, the date the application was filed (20 CFR 416.920(g)).

(Tr. 513-27).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

---

[2] Plaintiff's past relevant work was a moving helper, an unskilled, very heavy position. (Tr. 526, 549).
[3] Relying on the VE's testimony, the ALJ found that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as machine tender feeder (375,000 jobs in the national economy) and inspector (260,000 jobs in the national economy). (Tr. 526-27, 550-51).

4

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D.  Specific Error

In his sole assignment of error, plaintiff alleges the RFC finding is not supported by substantial evidence because the ALJ included an arbitrary definition of the term "superficial." (Doc. 10).  Plaintiff argues that "the ALJ took it upon himself to define the term 'superficial,' but failed to explain in his analysis how his arbitrary definition of the term 'superficial' properly accounted for the State Agency psychologists' limitation." (*Id*. at PAGEID 944).  Plaintiff contends that by failing to include an explanation as to the definition of "superficial," the ALJ's "RFC cannot be relied on to demonstrate that [plaintiff] could return to any other work in the national economy."  (*Id*. at PAGEID 949).

The Commissioner disagrees, arguing the ALJ's RFC was supported by substantial evidence because "the ALJ properly accommodated the qualitative limitation of superficial interaction in his RFC finding by restricting Plaintiff to only straightforward exchange of information without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over-the-shoulder supervision."  (Doc. 11 at PAGEID 962, citing Tr. 517, 522).  The Commissioner contends that "the ALJ properly used this definition in both his RFC finding and

his hypothetical question to the vocational expert and, critically, nothing in the record undermined the ALJ's definition." (*Id.*, citing *Richard S. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2176, 2023 WL 2805347, at **13-15 (S.D. Ohio Apr. 6, 2023)).

The ALJ alone is responsible for determining a plaintiff's RFC. *See* 20 C.F.R. § 416.946(c). While medical source opinions are considered, the final responsibility for deciding the RFC is reserved to the Commissioner. *See* former 20 C.F.R. § 416.927(d)(2); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). Further, "it may fall to the ALJ to 'convert[ ] and incorporate[ ]' the limitations set forth in a medical opinion 'into vocationally relevant terms' – i.e., terms that are relevant and meaningful in the DOT / SCO and/or the VE's own vocational experience – before including those limitations in a hypothetical posed to a VE." *Stoodt v. Comm'r of Soc. Sec.*, No. 3:20-cv-2370, 2022 WL 721455, at *16 (N.D. Ohio Jan. 13, 2022) (quoting *Modro v. Comm'r of Soc. Sec.*, No. 2:18-cv-900, 2019 WL 1986522, at *7 (S.D. Ohio May 6, 2019)) (alterations in original), *report and recommendation adopted*, 2022 WL 716105 (N.D. Ohio Mar. 10, 2022). "However, if the ALJ accepts a medical opinion but does not include a restriction recommended by that expert in the RFC, the ALJ must explain why he did not do so." *Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-cv-58, 2020 WL 240812, at *2 (S.D. Ohio Jan. 16, 2020). "[A] district court cannot uphold an ALJ's decision, even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge

6

between the evidence and the result.'" *Ephraim v. Saul*, No. 1:20-cv-00633, 2021 WL 327755, at *7 (N.D. Ohio Jan. 8, 2021), *report and recommendation adopted sub nom. Ephraim v. Comm'r of Soc. Sec.*, 2021 WL 325721 (N.D. Ohio Feb. 1, 2021) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)).

This matter was previously remanded because the ALJ omitted from the RFC the state agency psychologists' limitation to superficial interaction. (*See* Tr. 560-67, 586). In remanding the matter to the Commissioner, the Court stated it was "unable to discern from the ALJ's general discussion of their opinions whether the omission of superficial interaction from the RFC was an intentional implicit rejection of those opinions or a mere oversight." (Tr. 563; *see also* Tr. 565-66). On remand, the ALJ's RFC included the state agency psychologists' opinions that plaintiff be limited to "superficial" interaction with others. The ALJ explained that he "accounted for the claimant's moderate limitation in interacting with others by limiting him to occasional and superficial interactions with supervisors, coworkers, and the public as detailed in the aforementioned RFC assessment." (Tr. 525).

There is no dispute that the ALJ adopted the state agency psychologists' opinions that plaintiff was limited to superficial interaction with others.[4] Plaintiff, however, takes issue with the ALJ's definition of "superficial" interactions which the ALJ defined as limiting plaintiff to interactions involving only "the straightforward exchange of information without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision. . . ." (Tr. 517). Plaintiff argues the ALJ created his own arbitrary definition of the term

---

[4] State agency psychological consultant Dr. Stanley Kravitz opined that plaintiff retained the ability to interact with others, but on an occasional routine and more superficial basis with the general public and supervisors, and on a routine basis with coworkers. (Tr. 80). On reconsideration, state agency psychological consultant Dr. Mary Hill opined that plaintiff retained the ability to interact with others on a superficial basis. (Tr. 97). In turn, the ALJ restricted plaintiff to superficial interactions with supervisors, coworkers, and the public. (Tr. 517).

7

superficial without any explanation for that definition or for the specific limitations included therein. (Doc. 10).[5]

The issue is whether the ALJ's failure to explain how he arrived at his definition of "superficial" interaction requires a remand for further proceedings. In *Betz v. Comm'r of Soc. Sec.*, No. 3:21-cv-2408, 2022 WL 17717496 (N.D. Ohio Nov. 8, 2022), *report and recommendation adopted*, 2022 WL 17985680 (N.D. Ohio Dec. 29, 2022), the court addressed a similar situation where the ALJ found the plaintiff was limited to "superficial contact," and the ALJ defined that term as "no tasks involving arbitration, negotiation, confrontation, directing the work of others, persuading others or being responsible for the safety or welfare of others." *Id.*, at *1. The plaintiff in *Betz* similarly argued the ALJ erred by failing to provide any reasoning or explanation for using that definition or for rejecting counsel's alternative definition. *Id.*, at *10. The *Betz* court rejected that argument, explaining in relevant part:

> The term "superficial interaction" is not defined under the Dictionary of Occupational Titles ("DOT") or Selected Characteristics of Occupations ("SCO"). *See Stoodt v. Comm'r of Soc. Sec.*, No. 3:20-cv-2370, 2022 U.S. Dist. LEXIS 43108, at *49, 2022 WL 716105 (N.D. Ohio Jan. 13, 2022). And there have been contrary findings as to whether the "plain meaning" of the term requires further definition. *See Beulah v. Comm'r of Soc. Sec.*, No. 1:20-cv-2271, 2022 U.S. Dist. LEXIS 92055, at *94, 2022 WL 1609236 (N.D. Ohio Mar. 25, 2022) (holding that the term "superficial" does not have a defined meaning for purposes of vocational testimony); *but contrast Dawn M. v. Comm'r of Soc. Sec.*, No. 3:20-cv-0258, 2022 U.S. Dist. LEXIS 102055, at *18, 2022 WL 2037804 (S.D. Ohio June 7, 2022) (holding that the term "superficial" "is a well-defined limitation in the Social

---

[5] Plaintiff argues the term "superficial" has been defined by the Social Security Administration. (Doc. 10 at PAGEID 948). In support, plaintiff cites a July 22, 2022 Appeals Council order remanding a social security matter to the Commissioner of Social Security involving a separate claimant in the Northern District of Ohio. (Doc. 10-1 at PAGEID 953-54). The document states, in pertinent part, that "'superficial interaction' is a term that is readily defined, understood and applicable to a work setting, as it speaks to the depth, kind and quality of social interactions, and indicates that the claimant could not have sustained more than shallow or cursory interactions with others, i.e., coworkers, the general public, and/or supervisors." (*Id.*). Other than attaching this document as an exhibit to his Statement of Specific Errors, plaintiff fails to explain *how* the Appeals Council's definition of the term "superficial," which occurred in a separate social security case in the Northern District of Ohio, would have any consequence in this action currently before the Court. Moreover, plaintiff fails to put forth any analysis or argument as to why the ALJ's definition of "superficial" in this matter does not comport with the Appeals Council's definition of the term "superficial."

Security context."). In cases in which the definition of "superficial" interaction has been in dispute, however, it has been tied to the consideration of VE testimony or a medical opinion. *See e.g., Stoodt*, 2022 U.S. Dist. LEXIS 43108 at *47-54, 2022 WL 716105 (remanding the ALJ's decision because the ALJ failed to build a logical bridge between the evidence and the ALJ's finding that the claimant was limited to "superficial" interactions when such findings were contrary to the state agency consultants' opinions); *Beulah*, 2022 U.S. Dist. LEXIS 92055, at *86-98, 2022 WL 1609236 (remanding the ALJ's decision because the ALJ failed to adequately explain her failure to include a "superficial" interaction limitation in the RFC after putting one to the VE).

\*\*\*

At its core, Betz's argument rests on the contention that the ALJ failed to adequately explain how he chose his definition of the term superficial contact, making the definition arbitrary. The ALJ, however, defined the scope of "superficial" interactions and used that definition both in posing hypothetical questions to the VE and in articulating his RFC findings. (Tr. 20, 57-58). Further, none of the opinion evidence provided a conflicting definition of superficial contact. Thus, unlike other cases that have addressed an ALJ's use of the term "superficial" interactions, this case does not hinge on whether the ALJ's definition was consistent with the VE's or other opinions' articulations.

\*\*\*

Looking at the decision as a whole and with common sense allows for meaningful review of the ALJ's evaluation of Betz's RFC. *See Reynolds*, 424 F. App'x at 416. Although the ALJ must connect the RFC limitations to the evidence and build a logical bridge between the two, this does not require that the ALJ provide explicit reasoning for why he defined superficial the way he did. Rather, the ALJ needed to explain why he determined that Betz was limited to superficial contact *as he defined it*, and it is sufficient that the record not be clearly contrary to that definition. *See Fleischer*, 774 F. Supp. 2d at 877. And here, the ALJ's discussion of the record evidence related to Betz's mental health conditions built such a bridge.

\*\*\*

Although the ALJ did not explicitly provide a reason for why he chose to define "superficial" as he did, the evidence both makes such a definition reasonable and does not directly contradict any portion of it. Nor has Betz identified any contradictory evidence. As such, for us to nitpick the ALJ's definition of "superficial" would risk involving us with invading the zone of choice within which the Commissioner operates. . . .

9

*Id.*, at *10-12 (citation omitted). *See also Richard S. v. Comm'r of Soc. Sec.*, No. 2:22-cv-2176, 2023 WL 2805347, at *14 (S.D. Ohio Apr. 6, 2023) (ALJ did not err by crafting a vocationally relevant definition of "superficial interpersonal contact" where such definition was "supported by substantial evidence" and "not contradicted by other record evidence"), *report and recommendation adopted*, No. 2:22-cv-2176 (Doc. 17); *Charlee N. A. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3085, 2023 WL 312791, at *5 (S.D. Ohio Jan. 19, 2023) ("The undersigned agrees with those courts that find no reversible error where the opining source neglects to define the term 'superficial interaction' *and* the ALJ provides a sufficient explanation for why he or she determined that the claimant was limited to superficial contact as the ALJ defines that term.") (citing *Betz*, 2022 WL 17717496), *report and recommendation adopted*, 2023 WL 1766096 (S.D. Ohio Feb. 3, 2023).

In the instant case, the state agency psychologists opined that plaintiff was limited to "superficial" interaction with others without defining the term "superficial." (Tr. 80, 97). The ALJ adopted their limitation of "superficial" interaction with supervisors, coworkers, and the public, and the ALJ defined that term in the RFC as "interactions . . . limited to the straightforward exchange of information without negotiation, persuasion, conflict resolution, close teamwork, tandem work, or over the shoulder supervision. . . ." (Tr. 517). The ALJ thoroughly examined the evidence of record and explained that he limited plaintiff to "superficial" interactions with supervisors, coworkers, and the public to "account[] for the claimant's moderate limitation in interacting with others. . . ." (Tr. 525; *see also* Tr. 515).

Although the ALJ did not explain how he arrived at his definition of superficial, the definition he chose is supported by substantial evidence and is not contradicted by the other record evidence. In concluding that plaintiff has a moderate limitation in interacting with others,

the ALJ explained that plaintiff reported to Dr. Swearingen that he had "no difficulties interacting with others except for an isolated incident with a supervisor." (Tr. 525, citing Tr. 391). The ALJ further cited records showing plaintiff exhibited normal and cooperative behavior; he regularly socialized with family; and he resided with a friend, indicating an ability to interact appropriately with those known to him. (Tr. 525, citing Tr. 475, 496, 787, 816, 871). Moreover, the state agency psychologists opined that plaintiff was moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 80, 97). In turn, the ALJ's definition of "superficial" reasonably accounts for those opinions and the findings above by limiting plaintiff's interactions to the straightforward exchange of information without negotiation, persuasion, conflict resolution, or over the shoulder supervision. (Tr. 517). Further, Dr. Hill opined on reconsideration that plaintiff was moderately limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 97).[6] The ALJ's RFC accommodates this limitation by restricting plaintiff to interactions without close teamwork or tandem work. (Tr. 517). In addition, the ALJ's hypothetical questions to the VE incorporated the ALJ's definition of superficial, and based on this definition, the VE testified there were a significant number of available jobs in the national economy. (Tr. 550-51).

      The ALJ's defined scope of "superficial" interactions was incorporated into the RFC determination and the hypothetical questions posed to the VE. Plaintiff has not cited to opinion evidence that contradicts the ALJ's superficial interaction definition. Similar to *Betz*, the ALJ here was required "to explain why he determined that [plaintiff] was limited to superficial contact *as he defined it*, and it is sufficient that the record not be clearly contrary to that

---

[6] Contrary to Dr. Hill's opinion on reconsideration, Dr. Kravitz opined that plaintiff was not significantly limited in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 80).

11

definition." *Betz*, 2022 WL 17717496, at *11 (emphasis in original). The ALJ's discussion of the medical record and, in particular, the opinions of the state agency psychologists, substantially support the ALJ's definition of "superficial" enabling this Court to meaningfully review the decision. As the ALJ adequately explained the basis for his RFC finding—a finding that the ALJ alone is empowered to craft—the Court recommends that plaintiff's sole assignment of error be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's Statement of Errors (Doc. 10) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 9/30/2023

Karen L. Litkovitz
Chief United States Magistrate Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

PAUL S.,                                        Case No. 2:22-cv-4090
    Plaintiff,                           Morrison, J.
                                                Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).